633 So.2d 421 (1993)
Attorney General Mike MOORE and the Mississippi Ethics Commission, ex rel., Chickasaw County, Mississippi
v.
Derwood McCULLOUGH.
No. 91-CA-0079.
Supreme Court of Mississippi.
November 4, 1993.
Rehearing Denied March 17, 1994.
Michael C. Moore, Atty. Gen., Larry E. Clark, Asst. Atty. Gen., Jackson, for appellants.
Grady F. Tollison, Jr., Tollison Austin & Twiford, Oxford, Kenneth M. Burns, Okolona, Mary Marvel Fyke, Jackson, for appellee.
Before DAN M. LEE, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the Court:
A complaint was brought by Attorney General Mike Moore and the Mississippi Ethics Commission against Derwood McCullough, Chancery Clerk of Chickasaw County, in the Second Judicial District of Chickasaw County, alleging a violation of Mississippi Code Annotated Section 25-4-105(3)(a). That section of the Ethics in Government laws prohibits a public servant from being a contractor, subcontractor or vendor with the governmental entity of which he is a member. The lower court sustained McCullough's motion to dismiss, finding the transaction in question did not violate the cited code section.
*422 Appellants submit the trial court erred in sustaining the motion to dismiss as the ruling was based on four erroneous findings. After considering each assignment of error we affirm, finding that Issue I is dispositive of the case.

FACTS
On July 14 and 21, 1988, the Chickasaw County Board of Supervisors, acting through their Chancery Clerk, Derwood McCullough, advertised in a newspaper, The Okolona Messenger, for a piece of equipment, specifically, a used front-end loader. In the advertisement, the board reserved the right to acquire the equipment in any one of three ways: (1) to purchase it in installments under the provisions of Miss. Code Ann.Section 19-13-17 (1972), and, when the amount of notes provided for by that section was known, to accept public bids for the sale of the notes; (2) to effect a lease-purchase of the equipment under the provisions of Miss. Code Ann.Section 31-7-13 (1972), or (3) to pay cash for the equipment.
On August 1, 1988, the board unanimously accepted the bid of Mississippi Road Supply Company on a lease-purchase basis for $70,000 plus 8% interest over a 60-month term, resulting in a monthly payment by the county of $1,419.35. On September 6, 1988, a contract entitled "Lease-Purchase Agreement" to that effect was executed by Mississippi Road Supply Company and the Board of Supervisors of Chickasaw County. On that same day, Mississippi Road Supply Company assigned the Lease-Purchase Agreement to M & H Loans. Appellee concedes that M & H Loans was in effect Derwood McCullough; McCullough thus purchased the instrument for its face value, $70,000.
M & H Loans received monthly payments of $1,419.35 from Chickasaw County under the agreement from October, 1988, through March, 1990. These payments amounted to $25,548.30, of which $7,392.84 was interest. Appellants sued to recover the interest payments as a pecuniary benefit obtained in violation of Miss. Code Ann.Section 25-4-103(a). Taking these facts as true, the trial court dismissed the action, finding the assignment of the Lease-Purchase Agreement to Derwood McCullough did not amount to a violation of Section 25-4-103(a).

I. DID THE TRIAL COURT ERR IN SUSTAINING McCULLOUGH'S MOTION TO DISMISS THE SUIT BASED ON ITS FINDING THAT THE ASSIGNMENT OF THE LEASE-PURCHASE CONTRACT TO M & H LOANS, McCULLOUGH'S BUSINESS, DID NOT COME WITHIN THE PROHIBITION OF SECTION 25-4-103(a)?

LAW
Following the assignment of the lease-purchase contract to M & H Loans, McCullough was charged with a violation of Section 25-4-105(3)(a), Mississippi Code of 1972, which provides:
(3) No public servant shall:
(a) Be a contractor, subcontractor, or vendor with the governmental entity of which he is a member, or have a material financial interest in any business which is a contractor, subcontractor, or vendor with the governmental entity of which he is a member.
Appellants argue that because the contract was immediately assigned to M & H Loans, the effect was to substitute M & H Loans for Mississippi Road Supply Company as the original contracting party with Chickasaw County. Although there have been few decisions analyzing the application of Section 25-4-103, we are not persuaded that the assignment of the lease-purchase contract to McCullough in the instant case was prohibited by that statute. Several factors aid us in reaching this conclusion.
First, there is no authority for the view that an assignment of a contract to a public servant's business violates the statute. Appellants urge the Court to so hold because to hold otherwise "would allow public servants to do business with themselves at will by going through another company first." While we agree that transactions of the type in question may give an appearance of impropriety, the fact remains that McCullough did not violate the clear language of the statute; neither McCullough himself nor his business, *423 M & H Loans, could be termed to be a contractor, subcontractor or vendor with Chickasaw County.
Further, the question arises whether McCullough as a chancery clerk could even be properly classified a "member" of the governmental entity involved in the present transaction  the Board of Supervisors of Chickasaw County. A review of the case of Attorney General Mike Moore and the Mississippi Ethics Commission v. William Jackson Renick, Cause No. 2138, Circuit Court of Benton County, Mississippi, November 9, 1990, is helpful on this point. The facts showed that the defendant, Renick, was a member of the Benton County Board of Supervisors, which participated in activities leading to the establishment of a furniture manufacturer, Benton Inc., being located in the county. Thereafter Renick and another individual formed a partnership for the purpose of hauling goods by truck. The partnership entered into a contract with the new company, Benton Inc., to do their hauling; this agreement was entered into with the approval of the Benton County Board of Supervisors, including official matters voted upon by Renick himself.
A civil action was brought against Renick charging violations of Miss. Code Ann.Sections 25-4-105(1) and (2). These sections prohibit a public servant from using his official position to obtain pecuniary gain for himself and from being interested directly or indirectly in any contract with the county approved by a board of which he is a member. Renick is currently on appeal before this Court. Its value in the case sub judice comes from an excerpt of the oral argument before this Court on June 8, 1993. Interestingly, the Attorney General's Office was represented by the same counsel in both Renick and the instant proceedings against Derwood McCullough. The Court propounded questions to counsel for the Attorney General's Office on whether a chancery clerk was considered a "member" of his governmental entity in the application of Section 25-4-101 et. seq. of the Ethics in Government statutes:
The Court: How far does this reach, like the chancery clerk who maybe has some responsibilities in issuing the bonds, in fact if they issue the bonds, or in preparing the deed for that matter? Would that mean the chancery clerk couldn't be an on-line worker in the furniture factory?
Attorney General's Office: No, sir, the chancery clerk's duties would be purely ministerial ... and the chancery clerk would not be a member of the board which authorized the bond issue. (emphasis added)
The Court: And so a purely ministerial employee would not have any problem? Attorney General's Office: No, sir, that would require again the clerk to be a member of the board or the group that authorized the contract. (emphasis added)
Confusion abounds when a comparison of the above statements with appellants' arguments in the case at bar is undertaken. Appellants first took the position before this Court that the "purely ministerial" duties a chancery clerk performs do not elevate his status to that of "member" of his governmental entity. In direct contradiction to that view, the Attorney General's Office emphatically concludes in the case sub judice that it is "beyond question that Chancery Clerk Derwood McCullough is a member of the Chickasaw County governmental entity at the time" of the questioned transaction. The two views are not capable of being reconciled and it is for this Court to end further debate on this question. We hold that a public servant with purely ministerial duties and with no power to vote on matters considered by the governmental entity with which he is associated, is not considered a "member" of that entity as the term is applied in Section 25-4-101 et. seq. of the Ethics in Government laws. McCullough, as chancery clerk of a county board of supervisors, is a prime example of an employee who is not to be considered a member of that governmental entity in the application of Section 25-4-105(3)(a). "Employee" is not a classification synonymous with "member."
We are bound to agree with the determination of the lower court that no violation of Section 25-4-105(3)(a) took place in the assignment of the lease-purchase contract to McCullough's business. We note that the *424 United States filed an indictment against McCullough charging embezzlement and conspiracy based on this same transaction, wherein McCullough's motion to dismiss was granted and the charges dismissed. See U.S. v. McCullough, 760 F. Supp. 101 (N.D.Miss. 1991). The district court addressed the identical issue of "whether the purchase of the lease/purchase agreement by McCullough's loan company, M & H Loans, and subsequent acceptance by McCullough as part owner of M & H Loans of the lease payments from Chickasaw County ... constitute a violation of the laws of the State of Mississippi," as stated in Section 25-4-105(3)(a). The court reviewed the language of the statute and stated:
Since this court has analyzed the state statute and McCullough's actions at length, this court feels constrained to interject in this opinion that it finds no conflict between M & H Loans' purchase of the lease agreement and Section 25-4-105, Miss. Code Ann. (1972), for the reason that the state statute clearly provides that the public official shall not be a `... contractor with the county ... or have a material financial interest in a business which is a contractor ... with the county ...' McCullough, through M & H Loans, did neither of those two acts. For the government to attempt to interpret Section 25-4-105 so as to make a prosecutable offense out of defendant's acts is overreaching and beyond the intent of the writers of this statute.
Id., at 102, 103.
As a final matter, we are of the opinion that while Section 25-4-105(3)(a) clearly does not prohibit transactions of the type under consideration, the result might have been entirely different had this action been brought under Section 25-4-105(3)(c). That section provides:
(3) No public servant shall:
(c) Be a purchaser, direct or indirect, of any claim, certificate, warrant or other security issued by or to be paid out of the treasury of the governmental entity of which he is an officer or employee.
There is no question but that the lease-purchase contract was a "security" and while McCullough is not a "member" of the board of supervisors, he is most definitely an "employee."

CONCLUSION
The decision of the lower court to dismiss this action based on the conclusion that no violation of Section 25-4-105(3)(a) occurred was not in error. Appellants' additional assignments of error are based upon their position to the contrary. As such, discussion of these issues is not presented. We recognize the potential for a negative public perception of any dealings between its servants and associated governmental entities. We conclude only that the appellee in the case at bar was not guilty as charged.
JUDGMENT IS AFFIRMED.
DAN M. LEE, P.J., and PITTMAN and BANKS, JJ., concur.
SULLIVAN, J., dissenting with separate written opinion joined by McRAE, J.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
HAWKINS, C.J., PRATHER, P.J., and JAMES L. ROBERTS, Jr., J., not participating.
McRAE, Justice, dissenting:
While I agree that a more persuasive case could have been made against McCullough under Miss. Code Ann. § 25-4-105(3)(c) (1991), I disagree with the majority's interpretation of Miss. Code Ann. § 25-4-105(3)(a) (1991). The majority's finding that a chancery clerk's duties with regard to a board of supervisors are "purely ministerial" should not remove the clerk's position from the purview of our Ethics in Government laws. Accordingly, I dissent.
Article 6, Section 170 of the Mississippi Constitution specifies that in each county, the chancery clerk shall be the clerk of the board of supervisors. The clerk's general powers and duties are enumerated in Miss. Code Ann. §§ 9-5-133  141 (1991). The majority contends that because these duties are "purely ministerial," the clerk is not a "member" of the board of supervisors as contemplated *425 by the statute. The statute does not define "member." Miss. Code Ann. § 25-4-103(3)(o), however, defines "public servant" to include elected or appointed government officials; officers, directors, commissioners, supervisors, chiefs, heads, agents or employees of any government entity; and individuals whose salaries or expenses are paid from government funds. Therefore, it would appear that by passing laws specifically directed at reducing conflicts of interest and improprieties by elected officials and public servants, the legislature did not intend to split hairs. The mandate of the Act is clear. Miss. Code Ann. § 25-4-101 explicitly states:
The legislature declares that elective and public office and employment is a public trust and any effort to realize personal gain through official conduct, other than as provided by law, or as a natural consequence of the employment or position, is a violation of that trust. Therefore, public servants shall endeavor to pursue a course of conduct which will not raise suspicion among the public that they are likely to be engaged in acts that are in violation of this trust and which will not reflect unfavorably upon the state and local governments.
The assignment of the Lease-Purchase Agreement between the Chickasaw County Board of Supervisors and the Mississippi Road Supply Company to M & H Loans, the alter ego of Derwood McCullough, the erstwhile Chickasaw County Chancery Clerk, on the same day the contract was executed, gives every appearance of a less than arms-length transaction. In fact, it smacks of impropriety. These actions suggest that the public bidding process was merely a sham. The financing arrangement, further, was simply a "wham-bam, thank you, ma'am (or Sam)" transaction without any public notice. Moreover, it made the Board captive to McCullough's influence in the performance of the contract as well as in any necessary renegotiation of its terms.
McCullough's actions by and through M & H Loans violate the letter and spirit of the Ethics in Government Law, § 25-4-105(3)(a) and its corollaries in § 25-4-105(4) as well as other provisions of the act. The complaint against him raises only a violation of § 25-4-105(3)(a), but seeks such other relief as may be afforded by the statutes. Even though this is a notice pleading state, the majority begins and ends its analysis with § 25-4-105(3). Subsection (4), however, sets forth the parameters of acceptable activity, notwithstanding the provisions of subsection (3). Pursuant to § 25-4-105(4)(e), one may purchase "securities"[1] issued by the governmental entity "of which he is an officer or employee" if such securities were offered to the general public. There is no evidence that the lease-purchase agreement was offered to anyone but McCullough under the aegis of M & H Loans. As a further corollary to § 25-4-105(3)(a), § 25-4-105(4)(b) allows a public official to contract to provide goods or services to a governmental entity of which he is an officer or employee where he is the lowest and best bidder and three or more legitimate bids have been received. Likewise, there is no evidence that the lease-purchase agreement was even open for bids.
To exonerate McCullough solely on the basis of his "membership" status is contrary to the purposes of the Ethics in Government Law. Merely because he is not a voting "member" of the Board of Supervisors does not reduce his influence over its members and their decisions, especially when McCullough has their hands tied by the 60-month lease-purchase agreement. Accordingly, I dissent.
SULLIVAN, J., joins this opinion.
SULLIVAN, Justice, dissenting:
The majority's opinion is limited to a discussion of only one of the issues raised by the parties on appeal. In my view, the basis for its affirmance is a misinterpretation of the plain language and intent of the statute written into law by the Mississippi Legislature.
Accordingly, this dissent is limited to discussion of that issue, which is, whether Chickasaw Chancery Clerk McCullough, as *426 assignee of the lease-purchase agreement, can be said to be a public servant who is a contractor with a governmental entity of which he is a member, as defined under Miss. Code Ann. § 25-4-105(3) (1972). This section states,
§ 25-4-105
* * * * * *
(3) No public servant shall:
(a) Be a contractor, subcontractor or vendor with the governmental entity of which he is a member, other than his contract of employment... .
Section 25-4-105 is located in the Conflict of Interest section of the Ethics in Government statutory scheme. The two statutes immediately preceding § 25-4-105 are applicable to the language of all of the statutes in the Conflict of Interest article (§§ 25-4-101  25-4-119). The majority opinion and appellate briefs gave little, if any, attention to the definitional section of the statutory scheme. The legislative purpose statute and the definitional section prevent resort to guesswork upon which it appears that the majority opinion is based. These statutes, especially the definitional section, are pertinent to the proper interpretation of the statute at issue in the instant case.
§ 25-4-101. Declaration of public policy.
The legislature declares that elective and public office and employment is a public trust and any effort to realize personal gain through official conduct, other than as provided by law, or as a natural consequence of the employment or position, is a violation of that trust. Therefore, public servants shall endeavor to pursue a course of conduct which will not raise suspicion among the public that they are likely to be engaged in acts that are in violation of this trust and which will not reflect unfavorably upon the state and local governments.
§ 25-4-103. Definitions.
* * * * * *
(f) "Contract" means:
(i) Any agreement to which the government is a party;
(ii) Any agreement on behalf of the government which involves the payment of public funds.
* * * * * *
(g) "Government" means the state and all political entities thereof, both collectively and separately, including but not limited to:
(i) Counties;
(ii) Municipalities;
(iii) All school districts;
(iv) All courts; and
(v) Any department, agency, board, commission, institution, instrumentality, or legislative or administrative body of the state, counties or municipalities created by statute, ordinance or executive order including all units that expend public funds.
(h) "Governmental entity" means the state, a county, a municipality or any other separate political subdivision authorized by law to exercise a part of the sovereign power of the state.
(j) "Material financial interest" means a personal and pecuniary interest, direct or indirect, accruing to a public servant or spouse, ... .
* * * * * *
(o) "Public servant" means:
(i) Any elected or appointed official of government;
(ii) Any officer, director, commissioner, supervisor, chief, head, agent or employee of the government or any agency thereof, or of any public entity created by or under the laws of the state of Mississippi or created by an agency or governmental entity thereof, any of which is funded by public funds or which expends, authorizes or recommends the use of public funds; or
(iii) Any individual who receives a salary, per diem or expenses paid in whole or in part out of funds authorized to be expended by the government.

*427 IS CHICKASAW COUNTY A GOVERNMENTAL ENTITY OF WHICH McCULLOUGH IS A MEMBER?
McCullough's Supplemental Brief argues that the statutory definition of governmental entity works in his favor. 25-4-103(h). I submit that that definition in fact works in the state's favor.
McCullough's argument is based on the premise that the board of supervisors is the "body" of the county. He argues that since the chancery court clerk is constitutionally also the clerk of the board of supervisors but has no voting power, that he is not a member of the board of supervisors, which has exclusive sovereign power at the county level. He asserts that since he is not a member as required in the statute in issue, the judgment should be affirmed.
Miss. Code Ann. 25-4-103(g) apparently places a county board of supervisors within the definition of the word government. Section 25-4-103(h) places only the state, a county, municipality, or political subdivision under the definition of the word governmental entity.
The statute requires merely that he be a "member" of the "governmental entity." And the statute has already defined governmental entity as the county, municipality, or political subdivision, not merely the mayor, city council, board of supervisors, or other executive officials. 25-4-103(h). And the statute specifically at issue here, 25-4-105(3)(a), states that he be a member of that entity, not a member of the board of supervisors of that entity. Furthermore, since the legislature used the general word member in the phrase, "the governmental entity of which he is a member," instead of a more specific word such as officer, it does not stretch the meaning of the statutory language to include the chancery clerk as a member of the county governmental entity. McCullough's interpretation, that this public servant is excluded from the definition, is further away from the plain language of the statute.
The majority opinion focuses heavily on the meaning of member because it ignores the first words of § 25-4-105(3). It states, "(3) No public servant shall: ... (a) Be a contractor ... with the governmental entity of which he is a member... ." Miss. Code Ann. § 25-4-105(3) (1972) (emphasis added). Section 25-4-103(o) defines public servant liberally; the term includes any elected official, any officer, director, commissioner, agent or employee. Hence, when substituting one of these words for public servant, the statute at issue here becomes the following: "No employee shall be a contractor with the governmental entity of which he is a member." Accordingly, the linguistical significance of member becomes merely functional. It is a tool employed by the drafters to explicitly say the obvious, that a conflict of interest happens in cases where the public official deals with the county of which he is associated, not where he deals with those governmental entities of which he is not a member. For example, the legislature included member here in order to make certain that John Doe, an employee of Hinds County, is prohibited from having a business relationship with Hinds County; but he may do business with Warren County, or the City of Ridgeland, or Yazoo County, i.e., governmental entities of which he is not a member.
Note also, that § 25-4-3, a section of definitions not specifically designated for the statute at issue, may nevertheless be helpful in defining member. It states that "public official" shall mean ... (ii) Any member, officer, director, commissioner, supervisor, chief, head, agent or employee ... of any political subdivision... ."
My point is that since member is used in series with terms such as officer and supervisor, then the drafters of this legislation must have understood that member had a different, or more general meaning than terms such as officer or supervisor.
The majority seems to heavily rely on what the Assistant Attorney General said during oral argument in a related case. There is no caselaw on this statute, and thus, even though the attorney himself should be held to consistency in his arguments, the statute and positive law of Mississippi is not bound by the arguments made by attorneys. The majority wishes to make a distinction between those who make policy and those whose jobs *428 are merely ministerial. Even though there is good reason for such a rule, and there is analogous caselaw in other areas of law making such a distinction, this Court cannot make such a distinction in this case. The reason is that the opportunity to make such a distinction occurred when the legislature passed this law. It has already decided the policy; once that has happened, this Court's role is to apply that policy to the facts.
Furthermore, the statute in question here further precludes this Court from active policy making, in the legislative purpose section. It states, among other things, that public servants "shall endeavor to pursue a course of conduct which will not raise suspicion among the public that they are likely to be engaged in acts" that violate the public trust. "This legislature declares that elective and public office and employment is a public trust... ." The majority's suspicion is admittedly raised by the acts of McCullough in this case. Whether his motives were good or bad, he certainly did not "endeavor to pursue a course of conduct which will not raise suspicion among the public." Miss. Code Ann. § 25-4-101 (1972).
This case is analogous to Mississippi's Rules of Professional Conduct for attorneys. A lawyer cannot place his client's money in his own bank account; he must place it in a separate account. Rule 1.15. For many attorneys, this rule is unnecessary, because they are responsible and can be trusted to keep accurate records and such, so that their client's funds are not mishandled. However, the rule exists and must be followed, even by those who would otherwise act with the utmost good faith and responsibility, in order to ensure that mishandling of a client's funds rarely happens. Without such rules, the few who would act in bad faith would scar the entire legal profession, and in effect, ruin the vital public trust in its officers of the court.
As assignee, McCullough has legal rights which are enforceable against the county. Even though in his capacity as clerk of the Board of Supervisors, he does not vote, he still has a special advantage due to his position; that is, he has opportunity to gain knowledge which would put the county at an unfair bargaining position, if a breach of contract is alleged and litigation begins. It yields the appearance of impropriety, a set of facts similar to "insider trading." Whether a violation of the public trust occurred in fact is irrelevant, since this yields the suspicion that a violation has occurred. Hence, McCullough's involvment in this case does "reflect unfavorably upon the state and local governments." Miss. Code Ann. § 25-4-101 (1972).
The chancery clerk is a member of the county entity, because he is subordinate to the county government and within the county's bureaucratic structure. Therefore, he is a member. He is not a member of the city, because its government has no authority over him. The word member in its common usage refers to a part of the whole, not a part of a specific division of the whole.
The entity here is the county; McCullough is the Chancery Clerk of Chickasaw County, which is a governmental entity of which he is a member. The majority states that McCullough is not a member of the board of supervisors; this is true, but the statute prohibits membership in the "governmental entity," which, here, is not merely the county board of supervisors, but the county itself. Miss. Code Ann. § 25-4-103(h) (1972). In fact, the business relationship in existence here is not one with the board of supervisors, but one with the county itself, because the board acts on behalf of the county.

IS McCULLOUGH AS ASSIGNEE A CONTRACTOR WITH CHICKASAW COUNTY?
Concerning the argument that the result might have been entirely different if section (3)(c) instead of (a) had been used, the court makes a distinction between (3)(a)'s terms, contractor and member, and (3)(c)'s terms, security and employee. The distinction between member and employee is unfounded. As discussed previously, the chancery clerk is a member of the governmental entity, the county. It is not surprising that (3)(a) and (3)(c) may cover similar acts, and thus are overlapping in scope. The reason is that the legislature, through its repeated passage into law of its statement of public policy for this ethics legislation, intended these provisions to be liberally construed, to prevent violations from slipping through loopholes. In *429 cases where it is not clear whether a specific act is within the scope of a statute based on its language only, legislative intent is the next indicator. Since the legislature has declared its intent for us, our job is easy. Apparently the legislature foresaw that this statute, like many others, would be tested for loopholes due to limits on human ability to write down every possible violation we intend to punish. Therefore, to cover such potential loopholes, a broad policy statement is made. Such a statement has been made, and must not be ignored in this case.
As to the distinction between contractor and security, the definitional section in the chapter at issue defines contract. It seems logical to infer that this definition also applies to contractor.
"Contract" means:
(i) Any agreement to which the government is a party; or
(ii) Any agreement on behalf of the government which involves the payment of public funds.
MISS. CODE ANN. 25-4-103(f).
It is not surprising that the legislature defined such terms so generally, in light of their legislative intent. The facts here involve an agreement. That would fall under the statutory language of "any agreement." One who makes a contract is a contractor, thus, one who makes "any agreement" under the statute would be a contractor under the statute. I do not see any reason for limiting the terms of this section further. Securities are formed or purchased through a bargained for exchange, a contract. A subcontractor, vendor, and one with a material financial interest in such a party is likewise prohibited by the statute; McCullough certainly falls under one of these categories.
The majority cites the case United States v. McCullough, 760 F. Supp. 101 (N.D.Miss. 1991). This is troublesome for two reasons. The first is that this Erie guess opinion is admittedly based on state circuit court decisions which were pending appeal at the time, one of which is the lower court decision in the instant case. 760 F. Supp. at 102. Hence, for the Mississippi Supreme Court to rely so heavily on this case, when additional, independent authority and reasoning is available, is logically circular.
Second, the federal district court was incorrect in concluding that McCullough's involvement in this business transaction did not fall under the scope of "a contractor, subcontractor, or vendor with the governmental entity... ." The federal district court stated that since McCullough purchased the account from Miss. Road Supply Co., McCullough was not a contractor with the government. United States v. McCullough, 760 F. Supp. at 104. The federal district court's opinion ignores the statutory definitions of Miss. Code Ann. § 25-4-103 (1972). United States v. McCullough, 760 F. Supp. at 102.
Moreover, since Miss. Road Supply Co. had a contract with Chickasaw County, which it assigned to McCullough, the result was that McCullough stepped into the shoes of Miss. Road Supply Co. for the purposes of that business venture. Great So. Nat. Bank v. McCullough Environmental Services, Inc., 595 So.2d 1282 (Miss. 1992) (assignee can enforce all the right, title, or interest which assignor previously had); Ford v. White, 495 So.2d 494, 496 (Miss. 1986) (assignee can enforce provisions of original contract); International Harvester v. Peoples Bank & Trust, 402 So.2d 856, 861 (Miss. 1981) (assignment of debt conveys entire interest to assignee). Although McCullough did not participate in the formation of the contract, he can now enforce a contract to which the government is a party.
The fact that McCullough became a party to this contractual relationship after its formation is irrelevant. In fact, the statute includes parties to a subcontract, who can become a subcontractor without having participated in the formation of the original contract. As assignee, McCullough can directly enforce the terms of this contract against the county without going through Miss. Road Supply Co. As stated previously, his involvment as a public servant of Chickasaw County while simultaneously having enforceable legal rights against the county would place him in a position with conflict of interest implications.
*430 Therefore, in my opinion the trial judge committed reversible error by holding that there was no violation of Section 25-4-105(3)(a) and I would reverse and remand this case for a new trial.
McRAE, J., joins this dissent.
NOTES
[1] The definition of "securities" provided by § 25-4-103(q) includes "evidences of debts or property or other such documents."