# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 9, 2010

No. 09-60063

Charles R. Fulbruge III
Clerk

WILLIAMSON POUNDERS ARCHITECTS PC

Plaintiff - Appellant-Cross-Appellee

v.

TUNICA COUNTY MISSISSIPPI, Its Board of Supervisors and Its Board of Members; JAMES DUNN; CEDRIC BURNETT; PAUL BATTLE, III; CURTIS JACKSON; BILLY PEGRAM

Defendants - Appellee-Cross-Appellants

Appeals from the United States District Court
for the Northern District of Mississippi

Before REAVLEY, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

This suit is about choice of law. The choices are the law of Mississippi and that of Tennessee. We must choose because an architectural firm brought suit against a Mississippi county and its governing board under a contract that made Tennessee's law controlling. The Mississippi district court granted summary judgment in favor of the county, finding the contract's choice was overridden by the public policy of the State in which suit was brought. We AFFIRM.

## I. FACTS

In May 2001, Tunica County, Mississippi, and Williamson Pounders Architects ("WPA") entered into a contract to design the Tunica County River

Front Park (the "Project").  WPA then entered into a consultant contract with PDR Engineers, Inc., which the parties refer to by the name of its parent, Tetra Tech.  Tetra Tech agreed to provide design and construction administration services for the Project.  Tetra Tech was to correspond only with WPA.

On February 7, 2002, WPA and Tetra Tech met with Tunica County representatives.  Not included were any members of the Tunica County Board of Supervisors, the County's governing body.  The County's representatives requested changes in the Project that could substantially increase its scope and its cost.  WPA maintains that at this meeting, County Administrator Kenneth Murphree, who is a County employee but not a member of the Board, agreed to the cost increase, which eventually raised the costs from about $18 million to about $22 million.

On April 11, 2002, Tetra Tech submitted to WPA its first "Change Request," which was a request to be paid for additional work.  WPA refused to authorize any additional fees.  It informed Tetra Tech that it "was not to discuss this with Tunica."  There was no contractual relation between the County and Tetra Tech.  Correspondence between Tetra Tech and WPA continued for over a year, but Tunica County was not notified of Tetra Tech's Change Requests.

In September 2003, over a year after Tetra Tech first submitted its bills, WPA requested a meeting with Tunica County to discuss Tetra Tech's charges. Tetra Tech submitted another Change Request in November 2003 for additional services.  In May 2004, Tetra Tech, WPA, and Tunica County met to discuss the changes.  Tetra Tech submitted a letter to Tunica County in June 2004 that outlined the increases in the Project that "were discussed at [the] meeting last month." WPA sent a letter to Tunica County requesting payment for the Change Request and later sent the final bill, dated August 5, 2004.

Tunica County refused to pay the additional costs.  In December 2006, WPA, and not Tetra Tech, filed suit against Tunica County under theories of

No. 09-60063

breach of contract, *quantum meruit*, and equitable estoppel. WPA sought fees in the amount of $203,195 for additional work performed by Tetra Tech.

The controlling issue is which State's law applied. The contract between the County and WPA, which was on a standard American Institute of Architects form, contained a choice-of-law provision. Under it, the law of the principal place of business of WPA, which is Tennessee, would govern any disputes. The contract was performed in, and suit was brought in, Mississippi.

More than one dispositive order was entered, then revised. The district court's analysis changed as the case developed. We need not review the progression of decisions but will explain only the final one.

We summarize the effect of the final decision. The district court held that Mississippi law applied. Tunica County could not be liable for breach of contract prior to the formal notification it received in October 2003 of Tetra Tech's additional work. All breach of contract claims arising prior to October 2003 were dismissed. The parties stipulated that work performed after that date was minimal, making "futile" any trial just on those claims. WPA was willing to dismiss its post-October 2003 claims. Accordingly, the district court entered a final judgment dismissing all claims and counterclaims on December 18, 2008. WPA appealed. Tunica County cross-appealed.

## II. DISCUSSION

The one issue WPA raises on appeal is whether the district court's decision to apply Mississippi instead of Tennessee law was error. WPA asserts that the contract is clear that Tennessee law applies, and Mississippi public policy does not override the contract.

Choice-of-law questions are reviewed *de novo. Abraham v. State Farm Mut. Auto. Ins. Co.*, 465 F.3d 609, 611 (5th Cir. 2006). A district court hearing a diversity suit is to apply the choice-of-law rules of the state in which the action is brought. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th

Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941)). Analysis of Mississippi's choice-of-law principles for this diversity case that was heard by a Mississippi district court is therefore necessary.

Article 9 of the contract between the County and WPA contains a choice-of-law provision:  "This Agreement shall be governed by the law of the principal place of business of the Architect."  The principal place of business for WPA is Tennessee.  Generally, "courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." *Miller v. Fannin*, 481 So. 2d 261, 262 (Miss. 1985).  This general principle is "respected in the absence of anything violating the public policy of the forum jurisdiction." *Id.*

The Mississippi Supreme Court decision that both parties rely upon contains a comprehensive explanation of the state's choice-of-law principles, written by the scholarly Justice James L. Robertson. *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024 (Miss. 1985).  The court held that the primary rule is the "center of gravity" concept, which focuses on "which state has the most substantial contacts with the parties and the subject matter of the action." *Id.* at 1031.  Important for us is that *Boardman* recognized two "nuances" in Mississippi's choice-of-law analysis.  First, the law of a single state does not necessarily control all of the issues in the case; instead, the center of gravity approach must be applied to each issue presented. *Id.*  Second, where the center of gravity pulls forcefully on another state's law but that law is "contrary to the deeply ingrained and strongly felt public policy of this state, . . . we may nevertheless apply and enforce this state's positive substantive law." *Id.*

We look at the claims presented in the district court in order to assess their center of gravity.  WPA made breach of contract, *quantum meruit*, and equitable estoppel claims. The *quantum meruit* claim was voluntarily dismissed.

No. 09-60063

Although the district court ruled on the equitable estoppel claim, WPA did not discuss it in its brief on appeal and has waived it. *Robinson v. Guarantee Trust Life Ins. Co.*, 389 F.3d 475, 481 n.3 (5th Cir. 2004).

Accordingly, we address only the breach of contract issue.

The district court applied Mississippi law to the breach of contract issue. It held that Tennessee law violated Mississippi's deeply ingrained public policy that "oral contracts can not be formed by or enforced against county boards of supervisors."

WPA maintains that under Tennessee law express oral contracts are enforceable, even against a county; Tunica County orally waived the notice requirement for Change Requests; and Mississippi's minute entry requirement is not a fundamental public policy requiring that Mississippi law be applied.

*A. Mississippi Law*

A county's Board of Supervisors acts and contracts on behalf of its county, meaning that a private party enters a relationship "with the county itself, because the board acts on behalf of the county." *Moore v. McCullough*, 633 So. 2d 421, 428 (Miss. 1993). Under Mississippi law, a county's Board of Supervisors can act only through its minutes:

> It has been repeatedly held in this State that a board of supervisors can contract and render the county liable only by a valid order duly entered upon its minutes, that all persons dealing with a board of supervisors are chargeable with knowledge of this law, that a county is not liable on a *quantum meruit* basis even though it may have made partial payments on a void oral contract, and, moreover, that in such case there is no estoppel against the county. Numerous other cases supporting these views are cited in the foregoing authorities, and we are of the opinion that the public interest requires adherence thereto, notwithstanding the fact that in some instances the rule may work an apparent injustice.

*Butler v. Bd. of Supervisors for Hinds County*, 659 So. 2d 578, 582 (Miss. 1995) (quoting *Colle Towing Co., Inc. v. Harrison County*, 57 So. 2d 171, 172-73 (Miss. 1952) (citations omitted)).

Mississippi has stated its justifications for this rigidity: (1) the public is entitled to the board's exercising its judgment only after it examines a proposal and has an open discussion among its members; and (2) the board's decision should not be reflected in the uncertain recollection of individual witnesses but will be evidenced by a written entry in board minutes, viewable by the public. *Lee County v. James*, 174 So. 76, 77 (Miss. 1937).

The Mississippi Supreme Court requires "strict adherence" to having a writing placed upon the minutes in order to bind a board of supervisors. *Butler*, 659 So. 2d at 581. This is a long-standing policy. *E.g., Bridges & Hill v. Bd. of Supervisors of Clay County*, 58 Miss. 817, 820 (1881).

*B. Tennessee Law*

WPA asserts that Tennessee law recognizes express oral contracts. *Computer Shoppe, Inc. v. State*, 780 S.W.2d 729, 734-36 (Tenn. Ct. App. 1989). The Tennessee Supreme Court has discussed contracting parties' ability to orally modify a contract via change orders. *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., Inc.*, 595 S.W.2d 474, 482-84 (Tenn. 1980).

We do not explore Tennessee law, though, because the answers to the questions posed in this appeal do not depend on what Tennessee law might allow. They turn on whether Mississippi's concern for procedural correctness in the contracts entered into by counties is sufficiently fundamental.

*C. Choice-of-Law*

WPA starts its argument with the fact that its contract with the County chooses Tennessee law. WPA maintains that during the February 2002 meeting, County Administrator Murphree agreed to the increase in the cost and scope of

the project.[1]  Based on the premise that Tennessee law would enforce the oral modification, WPA claims Tunica County is liable for the additional costs.

We have already discussed that foreign law chosen through the center of gravity test will not be enforced to the extent that it violates a fundamental and deeply ingrained public policy of Mississippi.  What has to be resolved is whether the Mississippi requirement of an entry in a board of supervisor's minutes to effectuate a binding change in a contract is a fundamental public policy.

Every state court decision adopting one legal principle as opposed to a competing one could be seen as policy-laden.  Some laws, though, "reflect public policies more strongly felt and more deeply ingrained than others." *Boardman,* 470 So. 2d at 1038-39.  Enforcement of some foreign laws "would be offensive to our sense of justice." *Id.* at 1039.  The decision in *Boardman* was that the policy behind some aspects of the State's uninsured motorist coverage rules was not a barrier to enforcement of an alternative law from Nebraska, chosen under the center of gravity doctrine.  *Id.*  The court recognized that at times, "no clear line can be drawn" between the more and the less fundamental.  *Id.*

Mississippi's public policy that minute entries are required to make contractual agreements with counties binding is a significant one.  The policy is long-standing.  It was announced at least by 1881, in a case in which, somewhat sharply, the Court stated that it was the private party's "folly" to rely on their recollections of an agreement as opposed to a writing:

> It takes an affirmative act of the board within the scope of its authority, evidenced by an entry on its minutes, to bind the county by a contract; and when thus made, the contract is not to be varied, any more than created, by the mere silence of a portion of the board and the mistaken assertions of others.

---

[1] This case concerns only the extra work done by Tetra Tech.  The County's attorney discussed briefly at oral argument that some contractors who made claims for extra work were paid.  What facts and legal theories might justify such payment are not before us.

*Bridges & Hill*, 58 Miss. at 820.

In addition, the rule has been justified in the state courts on policy grounds that focus on the public interest in discussion at open meetings and making records of agreements. *Lee County*, 174 So. at 77. The interest of Mississippi in maintaining the integrity of county contracting is significant. The policy has been stated quite explicitly: "the only permissible method for the alteration of a contract with a board of supervisors is by a subsequent order entered on its minutes." *Butler*, 659 So. 2d at 581 (quoting *Warren County Port Comm'n v. Farrell Const. Co.*, 395 F.2d 901, 903-04 (5th Cir. 1968)).

Perhaps as important as any statement in confirming this policy's bedrock nature is the state Supreme Court's insistence that the requirement of a minute entry must be enforced even if it might seem to lead to an injustice. *Id.* at 582. All contracting parties are "charged with the knowledge that a board of supervisors can *only* make the county liable for a contract by a valid order duly entered upon its minutes." *Id.* (emphasis in original).

We conclude that these same considerations would lead the Supreme Court of Mississippi to hold that the requirement also overrides a choice-of-law provision that would cause the rule not to be applied.

Mississippi law applied. No oral adjustment to the contract with WPA is enforceable. The district court was correct in dismissing the claims.

Tunica County cross-appeals arguing the district court erred in not dismissing WPA's complaint in its first ruling on Tunica County's Motion to Dismiss. This issue is now moot.

AFFIRMED.