# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 19, 2010

No. 09-60519

Lyle W. Cayce
Clerk

ECO RESOURCES, INC.; SWWC SERVICES, INC.,

Plaintiffs-Appellants,

versus

CITY OF HORN LAKE,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:08-CV-232

Before SMITH, CLEMENT, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

ECO Resources ("ECO") appeals a summary judgment in its Contract Clause case against the City of Horn Lake, Mississippi. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60519

I.

In October 2002, ECO[1] and the city entered into a contract by which ECO would operate and maintain the city's water treatment and supply systems and its waste water system in exchange for regular monthly payments from the city. The agreed-to term was five years: from October 1, 2002, to September 30, 2007. Two years later, the parties modified the contract, so that it extended credit to the city to defer a few payments, and in return the city extended the end of the term by two years, until September 30, 2009.

In July 2005, a new mayor and Board of Aldermen came into office and continued to pay for ECO's services under the contract. On September 19, 2006, the city voted to modify the agreement by deleting certain lift stations from the contract. ECO agreed to the modification. On September 19, 2008, the Board unanimously passed Order # 09-31-08, canceling the contract.

ECO sued on October 1, 2008, alleging, in relevant part, a violation of the Contract Clause, U.S. CONST. art. I, § 10, cl. 1. Both sides moved for summary judgment. The district court granted summary judgment for the city, holding (1) that the city was authorized to cancel the contract under MISS. CODE ANN. § 31-7-13(n)(i); (2) that the cancellation did not amount to a substantial impairment, because § 31-7-13(n)(i) was on the books before ECO and the city contracted; and, alternatively, (3) that the cancellation was justified by a significant and legitimate public purpose.

---

[1] ECO assigned its contractual rights to SWWC Services, Inc., in March 2008. We refer to those two entities as ECO.

No. 09-60519

II.

ECO appeals.  We review a summary judgment *de novo*, applying the same standard as did the district court.  *Kornman & Assocs. v. United States*, 527 F.3d 443, 450 (5th Cir. 2008); *see generally* FED. R. CIV. P. 56.

ECO asserts a violation of the Contract Clause.  *See* U.S. CONST. art. I, § 10, cl. 1.  Contract clause disputes are governed by a three-part test.  "The threshold inquiry is whether the . . . law has, in fact, operated as a substantial impairment of a contractual relationship."  *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 504 (5th Cir. 2001) (quoting *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983)).  If we find substantial impairment, we determine whether the governing authority had a "significant and legitimate public purpose behind the regulation . . . ."  *Id.* (quoting *Energy Reserves*, 459 U.S. at 411-12).  And, finally, if it does, we "determine whether the impairment is reasonable and necessary."  *Id.* at 505.  ECO's claim fails at step one.

According to ECO, the city's order canceling the contract was "the ultimate in substantial impairment."  The city, however, claims that it had the right to cancel under MISS. CODE. ANN. § 31-7-13(n)(i) and Mississippi common law, which predate the contract with ECO.  The concern with regard to substantial impairment is "the extent to which the law has contravened the reasonable expectations of the parties."  *Lipscomb*, 269 F.3d at 506.  And "all persons dealing with [municipalities] are charged with knowledge of the laws by which it is governed, which limit the power of its officers."  *Tullos v. Town of Magee*, 179 So. 557, 558 (Miss. 1938).  ECO responds by claiming that MISS. CODE. ANN. § 2-27-7 essentially trumps § 31-7-13(n)(i) and allows municipalities to bind successor

No. 09-60519

boards in certain types of long-term contracts, including its contract.

ECO's Contract Clause claim, then, is in reality an analysis of the power of municipalities under Mississippi law. The relevant issues, concerning the construction of § 21-27-7 and the interplay between § 21-27-7 and § 31-7-13, are ones of first impression, leaving us to make an *Erie*[2] guess––to "determine, in our best judgment, how [the Mississippi Supreme Court] would resolve the issue if presented with the same case." *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009).

Section 31-7-13(n)(i) speaks in broad terms.[3] It states, in relevant part, that "[a]ll contracts for the purchase of commodities, equipment and public construction (including, but not limited to, repair and maintenance), may be let for periods of not more than sixty (60) months in advance . . . ." MISS. CODE ANN. § 31-7-13(n)(1). And it adds that "[t]erm contracts for a period exceeding twenty-four (24) months shall also be subject to ratification or cancellation by governing authority boards taking office subsequent to the governing authority board entering the contract." *Id.*

ECO argues that because section 31-7-13 is general, it is not controlling in the face of a contrary statute that speaks to the specifics of the contract.[4] As a

---

[2] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[3] Section 31-7-13 is Mississippi's public purchase law. It covers, in part, contracts for solid waste collection or disposal, sewage collection or disposal, and contracts for public construction and rentals. *See generally* MISS. CODE. ANN. § 31-7-13.

[4] ECO's claim that § 31-7-13 is wholly inapplicable to its contract is unpersuasive. ECO quotes from a state attorney general's opinion that states, "In a turn-key contract entered pursuant to Section 21-27-7, the fact that a private company would be purchasing parts and equipment to operate and maintain a municipal water system would not make the company subject to the state public purchasing laws." Miss. Att'y Gen. Op. 2000-0673, Snyder (Nov. 27, (continued...)

4

No. 09-60519

matter of law, ECO is correct that, under Mississippi law, "specific statutes govern over general ones."[5] But the "specific" statute ECO points to as authorizing municipalities to enter into longer, binding contracts does not necessarily negate § 31-7-13. And, more importantly, that statute does not even appear to cover its contract––at least not entirely.

ECO relies on § 21-27-7, which by its title governs waterworks. It states, in full:

> The governing authorities of municipalities shall have the power to erect, purchase, maintain and operate waterworks, and to regulate the same, to prescribe the rates at which water shall be supplied to the inhabitants, and to acquire by purchase, donation or condemnation, in the name of the municipality, suitable grounds, within or without the corporate limits, upon which to erect waterworks, and also the right-of-way to and from such works and the right-of-way for laying water pipes within the corporate limits, and from such waterworks to the municipality, and to extend such right-of-way from time to time. *The governing authorities shall have the power to contract with any person for the maintenance and operation of waterworks. Said authorities shall have the power to contract with any person for the erection and maintenance of waterworks for a term not exceeding twenty-five (25) years, fixing water rates in the contract subject to municipal regulations.* A contract for the erection or purchase of waterworks shall not, however, be entered into until submitted to a vote of the qualified electors and approved by a majority of those voting. A contract for maintenance under which the

---

[4] (...continued)
2000), 2000 WL 1899949, at *2 (Miss. A.G.). But it is not in dispute that *ECO* is not subject to the state purchasing laws in its day-to-day operation of the water and sewage systems; the dispute is whether and to what extent *the city* is subject to the state purchasing laws when it enters into maintenance contracts with entities such as ECO.

[5] *Diogenes Editions v. State*, 700 So. 2d 316, 320 (Miss. 1997); *see also Johnson v. Thomas*, 982 So. 2d 405, 423 (Miss. 2008) ("Because Rule 4(h) is the specific rule applicable in today's case and Rule 6(b)(1) is a general-application rule, the language in 4(h) controls.").

No. 09-60519

person who will perform such maintenance is wholly or partially re-
sponsible for fixing water rates shall not be entered into until sub-
mitted to a vote of the qualified electors and approved by a majority
of those voting. It shall be unlawful for any municipally owned
waterworks to supply water free of charge, or in any amount less
than the fixed charges, to any person, firm or corporation, except as
is expressly authorized by law.

MISS. CODE. ANN. § 21-27-7 (emphasis added). ECO argues that § 21-27-7 applies
to its contract to operate and maintain the city's water and sewage systems and
specifically grants municipalities the authority to enter into binding contracts up
to twenty-five years in length. As additional support, ECO points to the fact that
the contract with the city states, in its recital, that it was entered into pursuant
to § 21-27-7.[6]

Section 21-27-7 does not define waterworks, but it does not speak at all to
"waste water" or sewage system operation or maintenance. Furthermore, other
sections of the code use "waterworks" and "sewage system" alongside each other,
suggesting that sewage is not subsumed within the definition of waterworks.[7]
And ECO points us to no cases in which Mississippi courts have collapsed sewage
services into general waterworks services. The closest ECO comes to finding
support for reading § 21-27-7 as implicitly covering the operation of a sewer sys-

---

[6] ECO adds that "[n]o Mississippi case has construed Mississippi Code § 21-27-7 (As
Amended) to deny the rights of a private company who has entered into a contract for a term
extending or a specific fixed period of time for a water and sewer contract." True enough. But
ECO points to no Mississippi case that has construed § 21-27-7 as validating such a contract,
either.

[7] *See, e.g.,* MISS. CODE. ANN. § 21-27-11 ("Whenever used in Sections 21-27-11 through
21-27-69: . . . (b) The term 'system' includes waterworks system, water supply system, sewage
system, sewage disposal system, or any combination thereof, including any combined water-
works and sewage system.").

6

No. 09-60519

tem alongside a water system is in comments, made in passing, in a couple of attorney general opinions, which, under Mississippi law, provide guidance but are not binding on courts. *See, e,g.*, *Ball v. Mayor & Bd. of Aldermen*, 983 So. 2d 295, 305 (Miss. 2008).

The *Horan* opinion provides the best language for ECO. It states, "A municipality may contract with a private corporation to maintain and operate a municipal water and sewer system for a specified amount to be paid monthly to the corporation with the profits generated by the system accruing to the city pursuant to Miss. Code Ann. § 21-27-7." Miss. Att'y Gen. Op., Horan (Feb. 12, 1993), 1993 WL 669111, at *1 (Miss. A.G.). The second opinion ECO points to, *Snyder*, is a bit more opaque: In response to a question asking the attorney general to "reaffirm [its] prior opinions regarding the authority of a City entering into contracts with private contractors for the maintenance and operation of water and sewer systems," the opinion states that the office affirms its prior statement that "Section 21-27-7 is sufficient to permit municipal governing authorities to contract with a private company to operate a *water system* . . . ." Miss. Att'y Gen. Op. 2000-0673, Snyder (Nov. 27, 2000), 2000 WL 1899949, at *1 (Miss. A.G.) (emphasis added).

Neither opinion, however, provides any semblance of reasoning for those statements. The opinions do not analyze § 21-27-7 to determine that "waterworks" includes sewer systems, and they do not cite any caselaw suggesting that that is so. And, at any rate, the opinions are not all a boon to ECO. In *Snyder*, the attorney general notes that, even where a contract is entered into pursuant to § 21-27-7, "a municipality must comply with statutes governing public con-

struction, including Section 31-7-13"[8]—the very section that ECO argues does not apply because the contract was entered into pursuant to § 21-27-7.

Indeed, even if we were to read § 21-27-7 as encompassing a contract that provided not only for water services but also for sewage, the cancellation provision in § 31-7-13(n)(i) might still apply. Aside from the fact that the very same attorney general opinion on which ECO relies for its broad interpretation of § 21-27-7 suggests that contracts under § 21-27-7 are nevertheless subject to §31-7-13,[9] the contract here involved, at least in part, the operation and maintenance of a sewage system. Section 31-7-13 expressly lists "solid waste collection" and "contract for sewage collection or disposal" as matters that it covers. *See* MISS. CODE. ANN. § 31-7-13. We find it hard to accept ECO's entreaty to ignore that express language, particularly in light of the absence of any discussion about sewage systems in § 21-27-7. Essentially, to agree with ECO on the inapplicability of § 31-7-13(n)(i), the court would need to read in "solid waste/sewage collection and disposal" to § 21-27-7 while simultaneously reading it out of § 31-7-13. We doubt Mississippi courts would do so.

As we noted previously, § 31-7-13(n)(i) speaks in broad terms. It covers "[a]ll contracts for the purchase of commodities, equipment and public construction (including, but not limited to, repair and maintenance), [ which] may be let for periods of not more than sixty (60) months in advance . . . ." MISS. CODE. ANN. § 31-7-13(n)(i). And it provides that "[t]erm contracts for a period exceeding twenty-four (24) months shall also be subject to ratification or cancellation by governing authority boards taking office subsequent to the governing authority

---

[8] Miss. Att'y Gen. Op. 2000-0673, *supra*, 2000 WL 1899949, at *1.

[9] *See id.*

board entering the contract." *Id*. Although ECO makes a colorable argument that the common-law rule against binding successors to which the city refers contained exceptions for such functions as the erection and operation of waterworks or a contract for lighting, those exceptions do not map onto the current statutory framework. The plain fact is that ECO points to no cases to support its argument that the broad, express terms in § 31-7-13(n)(1) do not reach its contract and limit the power of contracting municipalities to bind their successors.

In light of the text of § 21-27-7 and § 31-7-13(n)(i), it is far from "plainly manifest"[10] that the municipality had the power to bind its successors to the contract entered into in 2002 and modified in 2004. We agree with the district court that the 2004 modification, extending the length of the contract from five years to seven, was an *ultra vires* act in the sense that the contracting board could not legally agree to bind a successor board to that contract.[11]

In summary, section 31-7-13(n)(i) limits a sitting board's ability to bind a municipality in term-maintenance contracts to no longer than twenty-four

---

[10] *Crittenden v. Booneville*, 45 So. 723, 725 (Miss. 1908).

[11] ECO argues as well that the city is judicially estopped from claiming that there is no binding contract, because the new board ratified the contract when it continued to accept benefits under it and when it voted in September 2006 to change certain contract provisions. *Cf.* MISS. CODE. ANN. § 31-7-13(n)(i) (allowing new-board ratification of prior-board contracts). We disagree. Merely continuing to receive benefits under the contract does not constitute assent. *See, e.g.*, *Williamson Pounders Architects PC v. Tunica County, Miss.*, 597 F.3d 292, 297 (5th Cir. 2010) (quoting *Bridges & Hill v. Bd. of Supervisors*, 58 Miss. 817, 820 (1881) ("It takes an affirmative act of the board within the scope of its authority, evidenced by an entry on its minutes, to bind the county by a contract . . . .")). And nothing in the September 2006 minutes evinces board approval of entering into a new contract with ECO. To the contrary, the relevant document approved by the city council, as recorded in its minutes, included an express disclaimer that the negotiated changes "shall in no way constitute . . . a ratification or approval of the aforementioned contract by the current Horn Lake Mayor and Board of Aldermen"—a provision to which ECO assented.

No. 09-60519

months––any term in excess of that is subject to cancellation by a successor board ––and any implied exception in § 21-27-7 is not applicable to the present contract. The subsequent board's cancellation, authorized as it was by Mississippi law that predates the contract with ECO, did not run afoul of the Contract Clause.

AFFIRMED.